IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

MARSHA MILLS BERRY,       )
                                     )
            Plaintiff,       )
                                     )
v.                               )        No.  11-3129-T
                                     )
COMMISSIONER OF          )
SOCIAL SECURITY,          )
                                   )
            Defendant.    )

## ORDER REVERSING THE DECISION OF THE COMMISSIONER AND REMANDING PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)

Plaintiff has filed this action to obtain judicial review of Defendant Commissioner's final decision denying her application for disability insurance benefits under Title II of the Social Security Act ("Act").[1] Plaintiff's application was denied initially and upon reconsideration by the Social Security Administration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on September 7, 2010.

On October 25, 2010, the ALJ issued a decision, finding that Plaintiff was not entitled to benefits. The appeals council affirmed the ALJ's decision. This decision became the Commissioner's final decision. Plaintiff then filed this action, requesting reversal of the Commissioner's decision or a remand. For the reasons set forth below, the decision of the

---

[1] Plaintiff also filed a Title XVI application for supplemental security income payments. She received a favorable determination with disability beginning February 2008 but was denied benefits secondary to excessive resources. R. 11, 77, 139-151.

Commissioner is REVERSED, and the action is REMANDED for additional proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

A Social Security claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. 42 U.S.C. § 405(g). "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Id. The court's review is limited to determining whether or not there is substantial evidence to support the Commissioner's decision, id.; Lindsley v. Commissioner, 560 F.3d 601, 604–08 (6th Cir. 2009) , and whether the correct legal standards were applied. See Kyle v. Commissioner, 609 F.3d 847, 854 (6th Cir. 2010).

The Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony and to decide the case accordingly. See Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007). When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion. See Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994). "[W]hen there is not substantial evidence to support one of the ALJ's factual findings and his decision therefore must be reversed, the appropriate remedy is not to award benefits. The case can be remanded under sentence four of 42 U.S.C. § 405(g) for further consideration." Faucher v. Secretary, 17 F.3d 171, 175 (6th Cir. 1994).

Pursuant to sentence four, a district court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court may immediately award Plaintiff benefits "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." Id. at 176 (citations omitted). "A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." Id. These factors are not present in this case, and, therefore, an immediate award of benefits is not appropriate. However, a remand pursuant to sentence four of § 405(g) is appropriate because all essential issues have not been resolved.

Plaintiff was forty-one years old on March 31, 2005, her date last insured. R. 456. Plaintiff has a college degree and worked as a television producer from 1981 to 1999. R. 19, 105, 146. She also attempted working at a clothing store in 2000 for two weeks. R. 356. She alleges disability beginning October 31, 1999, due to multiple sclerosis and blindness and low vision secondary to multiple sclerosis.

The ALJ enumerated the following findings: (1) Plaintiff met the disability insured status requirements through her date last insured;[2] (2) Plaintiff has not engaged in substantial gainful activity from the alleged onset of disability through her date last insured; (3) Plaintiff

---

[2] The records shows conflicting dates for Plaintiff's date last insured. Some records indicate March 31, 2005, while others show June 30, 2005. However, this conflict is not material to the outcome of Plaintiff's appeal.

has severe impairments of relapsing remitting multiple sclerosis ("M.S.");[3] however, she does not have impairments, either alone or in combination, that meet or equal the requirements of any listed impairment contained in 20 C.F.R. pt. 404, subpt. P, app. 1 of the listing of impairments; (4) Plaintiff has the residual functional capacity to perform the full range of light work, including lifting and/or carrying twenty pounds occasionally and ten pounds frequently, standing and/or walking about six hours in an eight-hour workday, sitting about six hours in an eight-hour workday, and unlimited push and/or pull; (5) Plaintiff's residual functional capacity does not preclude performance of her past relevant work as a television producer; (6) Plaintiff was not under a disability as defined in the Act at any time from her alleged onset date through the date of this decision.

The Social Security Act defines disability as the inability to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1). The claimant bears the ultimate burden of establishing an entitlement to benefits. Born v. Secretary, 923 F.2d 1168, 1173 (6th Cir. 1990). The initial burden of going forward is on the claimant to show that she is disabled from engaging in her former employment; the burden of going forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Id.

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

---

[3] The ALJ also found that Plaintiff suffers from an visual disorder but determined that it did not prevent work activity prior to the date last insured.

1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. An individual who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.

4. An individual who can perform work that he has done in the past will not be found to be disabled.

5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

20 C.F.R. § 404.1520(a)(4); Howard v. Commissioner, 276 F.3d 235, 238 (6th Cir. 2002).

Further review is not necessary if it is determined that an individual is not disabled at any point in the sequential analysis. 20 C.F.R. § 404.1520(a). Here, the sequential analysis proceeded to the fourth step. The ALJ found that Plaintiff could perform her past relevant work.

Plaintiff argues, and the court agrees, that the ALJ did not give the proper weight to the opinion of her treating physicians. Even when not given controlling weight under 20 C.F.R. § 404.1527(d)(2), medical opinions of treating physicians are accorded substantial respect, and an ALJ must provide good reasons for rejecting those opinions. See, e.g., Rogers v. Commissioner, 486 F.3d 234, 242 (6th Cir. 2007); Wilson v. Commissioner, 378 F.3d 541,545 (6th Cir. 2004).

Plaintiff was diagnosed with M.S. in 1993. R. 226. [4] After initially seeing neurologist, Dr. Patrick O'Sullivan, Plaintiff used a holistic approach of diet, rest, and time off from work to treat her symptoms. R. 131, 214-216, 354. She was advised in this by Dr. Roy Swank in Portland, Oregon.

After an exacerbation that required hospitalization in 1997, Plaintiff was treated by Dr. Michael Levin with the Semmes Murphy Clinic. Dr. Levin reported that "[h]er symptoms resolved over time however she was left with hyperalgesia of the lower extremities and persistent fatigue." R. 289-291. After another exacerbation that required hospitalization at the Regional Medical Center in early 2006, R. 361-367, Dr Levin noted that, post exacerbation, Plaintiff "still complained of some positional vertigo and also double vision in vertical directions on left gaze. She has a mildly unsteady gait." R. 248-249. Plaintiff's gait was "wide-based and ataxic." R. 350. In April 2008, Dr. Levin noted: "Chronically, [Plaintiff] has double vision, MS-related fatigue, spasticity particularly at night, right-sided chronic numbness, and abnormal gait." R. 347. Plaintiff's gait was "mildly imbalanced and ataxic. Tandem walking is poor, showing poor balance. Romberg is positive." R. 348.

In September 2010, Dr. Levin filled out a residual functional capacity questionnaire, which asked him to consider Plaintiff's condition from 1997 to June 30, 2005. R. 219-24. Dr. Levin noted that the frequency and length of his contact with Plaintiff was annual. He reported that Plaintiff's last relapse was 2006. In his opinion, it would be difficult for

---

[4] The classic symptoms of multiple sclerosis include: ocular disturbances, double vision, difficulty with speech, difficulty with performing with the extremities, weakness in arms or hands such as inability to grip, ataxia (difficulty in walking characterized by stumbling, wobbling, falling), abnormal reflexes, and clonus (extreme weakness in the legs). *The Sloane-Dorland Annotated Medical-Legal Dictionary* 632 (1994).

Plaintiff to maintain a consistent schedule or stressful environment that was typical in the workplace due to her M.S. R. 221. Dr. Levin opined that Plaintiff's functional limitations were extreme and essentially disabling. According to Dr. Levin, Plaintiff met the criteria of 11.09 of the Listing of Impairments (Listing 11.09), specifically section A and section C. See 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.09. R. 221-24.

The ALJ gave Dr. Levin's opinion little weight on the ground that it was inconsistent with Dr. Levin's own treatment notes and the record as a whole. According to the Commissioner, Plaintiff's unwillingness to start maintenance therapy in 1997 at Dr. Levin's suggestion, R. 16, 228, undermines her allegations of disabling daily symptoms and supports the ALJ's weighting of Dr. Levin's opinion. However, Plaintiff did not allege disability until 1999. Therefore, her choice of treatment in 1997 is not relevant as to whether she was disabled two years later.

There is some confusion as to the frequency and nature of Dr. Levin's treatment of Plaintiff. The Commissioner argues that Plaintiff was treated by Dr. Levin in 1997 and not again until 2006. As discussed above, Dr. Levin was specifically asked to assess Plaintiff's condition from 1997 to June 30, 2005, and he noted that the frequency and length of his contact with Plaintiff was annual. R. 219-24. The basis of Dr. Levin's opinion is unclear. Because he is Plaintiff's treating physician and a neurologist and because of the nature of Plaintiff's alleged disabling condition, i.e., M.S., the importance of clarifying this issue necessitates a remand. See 20 C.F.R. § 404.1527(d)(5) (When the treating physician is a specialist with respect to the medical condition at issue, his opinion is given more weight

than that of a non-specialist.) <u>See</u> <u>also</u> 20 C.F.R. Subpart P, App. 1, Section 11.00D ("Most cases of MS involve intermittent periods of symptoms and signs (exacerbation) followed by a period of improvement (remission). Exacerbations vary in frequency, duration, character and severity. Remissions similarly vary in duration and in the extent of improvement." <u>See</u> *Program Operations Manual System* ("POMS") DI 24580.015 Evaluation of Multiple Sclerosis (MS)).

The opinion of Dr. Gregory Laurence supports the findings of Dr. Levin. Plaintiff was seen by Dr. Laurence for a pregnancy consultation in March 2000. R. 401. Dr. Laurence, who is also certified in family medicine, continued to treat Plaintiff for several years thereafter with his most recent exam of Plaintiff on June 24, 2009. Dr. Laurence noted that "the patient's initial intake, entire obstetrical care and postpartum care were complicated by the patient's complaints of fatigue which were related to her 1993 diagnosis of multiple sclerosis." R. 263. Also, Plaintiff was having "not only fatigue but numbness in her feet, hypersensitivity to tactile sensation and cognitive dysfunction." R. 263. Dr. Laurence opined, "Although she clearly has had some level of increase in her level of symptoms, it is also clear that her symptoms in the year 2000 were severe enough to prevent Mrs. Berry from sustaining any form of employment." R. 264.

The ALJ rejected Dr. Laurence's opinion, *inter alia*, because he treated her for pregnancy related issues. However, since there is evidence that Dr. Laurence is also certified in family medicine and treated Plaintiff beyond her pregnancy, on remand his opinion should be re-assessed.

The Commissioner contends that Plaintiff has not presented evidence that she had disabling limitations during the relevant time period, even if she now has those limitations. He argues that Plaintiff has failed to meet her burden of proving that she suffered from disabling limitations during the relevant time period, i.e., from 1999 to March 31, 2005. According to the Commissioner, Plaintiff did not receive regular medical treatment during the relevant time period and, instead, only sought medical treatment during exacerbations. He contends that Plaintiff suffered only three exacerbations since her diagnosis, none of which occurred during the relevant time period. R. 240, 363.

In support of his argument, the Commissioner points to Dr. Mervat Wahba's statement that "[o]f note since her 1997 relapse--her first relapse since 1993-she had a symptom free period until 2006." R. 240. It appears that Dr. Wahba's statement may actually refer to relapses rather than Plaintiff's being completely symptom free. This should be clarified on remand.

In considering a case involving multiple sclerosis,

> Courts have long recognized that multiple sclerosis is a progressive disease for which there is no cure and which is subject to periods of remission and exacerbation. While multiple sclerosis is not per se disabling, the ALJ in evaluating a claimant with MS must consider "the frequency and duration of the exacerbations, the length of remissions, and the evidence of any permanent disabilities ." Since at least 1984, the Social Security regulations have recognized that '[i]n conditions which are episodic in character, such as multiple sclerosis ... consideration should be given to frequency and duration of exacerbations, length of remissions, and permanent residuals." 20 C.F.R. Ch. III, Pt. 404, Subpt. P, App. 1, § 11.00(D). Thus, "[w]hen a claimant with multiple sclerosis applies for social security benefits, it is error to focus on periods of remission form the disease to determine whether the claimant has the ability to engage in substantial gainful employment ."

Hamilton v. Astrue, 2012 WL 3065530 at *19 (E.D. Mo.) (quoting Tyser v. Astrue, 2010 WL 2541255 at *10 (D. Neb.)(internal citations omitted)).

In Begley v. Mathews, 544 F.2d 1345, 1354 (6th Cir.1976) (quotation omitted), the court noted that "[m]edical evidence of a subsequent condition of health, reasonably proximate to a preceding time, may be used to establish the existence of the same condition at the preceding time." See also Anderson v. Commissioner, 440 F. Supp.2d 696, 699–700 (E.D. Mich.2006); Higgs v. Bowen, 880 F.2d 860, 863 (6th 1988) (citing Martonik v. Heckler, 773 F.2d 236, 240 (8th Cir.1985)).

As explained in Anderson,

> The lesson of these cases is that multiple sclerosis is a disease that requires a longitudinal evaluation, which the ALJ failed to perform in this case. To that extent, the evidence of the plaintiff's exacerbation in 2003, after the expiration of her insured status, is relevant. Medical evidence is relevant to prove a disability only while the claimant enjoyed insured status. Estep v. Weinberger, 525 F.2d 757, 757-58 (6th Cir.1975). However, medical evidence that postdates the insured status date may be, and ought to be, considered, insofar as it bears on the claimant's condition prior to the expiration of insured status. Begley v. Mathews, 544 F.2d 1345, 1354 (6th Cir.1976) (stating that "[m]edical evidence of a subsequent condition of health, reasonably proximate to a preceding time, may be used to establish the existence of the same condition at the preceding time"); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir.1988).

440 F. Supp.2d 696, 699; see also Parish v. Califano, 642 F.2d 188 (6th Cir.1981), and Wilcox v. Sullivan, 917 F.2d 272 (6th Cir.1990) (Addressing the waxing and waning nature of multiple sclerosis and expounding on the fact that the ability to perform work activity during periods of remission does not establish an ability to engage in substantial gainful activity).

In the present case, the longitudinal record does not support the ALJ's residual functional capacity findings for Plaintiff. Therefore, this matter must be reversed and remanded for clarification and a reassessment of the opinions of the treating physicians. Additionally, on remand, the ALJ should obtain medical evidence regarding the frequency and duration of Plaintiff's exacerbations, as well as the severity of her symptoms (i.e. limitations of functioning) during these periods. Because the residual functional capacity findings are not supported by substantial evidence, neither is the finding that Plaintiff can return to her past relevant work as a television producer.

Having determined that the decision must be reversed, the court must decide whether it is appropriate to remand this case or to direct the payment of benefits. Because the record does not establish that Plaintiff is entitled to benefits or that all essential facts have been resolved, it is appropriate to remand this case for further proceedings.

In summary, the decision of the Commissioner is REVERSED, and the action is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for an assessment of the opinion of Plaintiff's treating physician in light of the factors set forth in 20 C.F.R. § 404.1527(d)(2). The clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE